### THE PEOPLE v. SWEETSER.

### THE PEOPLE v. WALBAUM AND BECKER.

*1. STATUTES:* VALIDITY OF: CONSTRUCTION.  All statutes must be construed, if possible, so as to give them validity, force and effect.  In doing this, respect must always be had to the language of the statute, the plain and obvious meaning of the words used, and the relation which one enactment bears to another, as well as their objects and purposes.

The People vs. Sweetser and Walbaum & Becker.

2. ———: AMENDATORY: ———. In construing an amendatory act, the old law the mischief arising under it and the remedy which the new law may be supposed to provide, should be considered.

3. ———: ———: ———. An amendment becomes a part of the original act, whether it be the change of a word, figure or line, or the striking out of an entire section, or striking out and inserting, or in any other way modifying or altering its provisions.

4. ———: ———: ———. When an amendatory act sets forth the entire sections amended, they are to be construed as introduced into the place of the repealed sections, and in view of the provisions of the original act after such introduction.

5. ———: ———: ———. The amendment of a statute by a subsequent one operates as to all acts done subsequently thereto as though the amendment had been a part of the original statute.

6. ———: PENALTY: APPLICATION. One section of the statute regulating the sale of intoxicating liquors, provides that "for every violation of the provisions of the first *and* second sections of this act, every person so offending shall forfeit and pay a fine, etc." *Held:*—That a person is liable to prosecution and punishment for the violation of either section. *And* and *or* are convertable as the sense of the statute may require, and this rule applies to criminal statutes.

7. *SALE OF INTOXICATING LIQUORS:* INDICTMENT: SUFFICIENCY. An indictment which charges the defendant with unlawfully and knowingly selling intoxicating liquors, to be drank in and upon the premises where sold, without having obtained a license and given bond as required by law: *Held,* sufficient, and that it is not necessary to describe the premises where, the person to whom, or the particular kind or quality of liquor, sold.

8. ———: ———: ———. Two or more persons may be jointly indicted for the sale of intoxicating liquors without license, when jointly engaged in the business, and if convicted the judgment must be several against each for the whole penalty.

## *Writ of Error to the Yankton County District Court.*

DEFENDANTS were indicted in the court below for selling intoxicating liquors to be drank in and upon the premises where sold, without first having obtained a license and given a bond as required by law.

The indictment in each case charges that defendants, naming them, on a certain day—(being April 6th, 1876, in one, and March 15th, 1876, in the other)—" at the city of Yankton, in the county of Yankton, aforesaid, did unlawfully and knowingly sell intoxicating liquors, to be drank in and upon the

premises where sold, without first having obtained a license and given a bond to the county commissioners of said county, as required by law." Concluding in the usual form " against the peace," etc.

A demurrer was interposed to each indictment, and the following causes assigned:

" 1. The indictment does not substantially conform to the requirements of the statute, in this: It is not direct and certain as regards the particular circumstances of the offense charged, alleging neither the premises where sold, the person to whom sold, nor the kind or quality of intoxicating liquors charged to have been sold.

" 2. That the facts stated in said indictment do not constitute a public offense.

" 3. That the court has no jurisdiction of the subject-matter."

The demurrers were overruled by the court, and the defendants having elected not to plead, but to stand on their demurrers, filed their motions in arrest of judgment, setting out the same causes as those stated in the demurrers.

The court denied these motions and passed sentence. To all of which rulings of the court defendants duly excepted, and sued out their writs of error.

*S. L. Spink* and *G. C. Moody*, for plaintiffs in error.

*J. R. Gamble*, District Attorney, for the People.

BENNETT, J.—The questions involved in the determination of these two cases, being with one exception, identical, and having been argued and submitted as one cause, will be considered together in this opinion.

The statutes of this Territory, regulating the sale of intoxicating liquors, are in a somewhat confused condition; sufficiently so, perhaps, to justify counsel for plaintiffs in error in raising the question as to whether there is any offense created by them, or punishment attached to the violation of their provisions.

All statutes must be construed, if possible, so as to give them validity, force and effect, and carry out the will of the legislator. In .doing this respect must always be had to the language of the statute, the plain and obvious meaning of the words used, and the relation which one enactment bears to another, as well as their objects and purposes. And in construing an amendatory act, the old law, the mischief arising under it, and the remedy which the new law may be supposed to provide, should be considered.

The traffic in intoxicating liquors is a business which in the hands of the most prudent, and subject to the wisest control, is regarded as more or less dangerous and demoralizing to a community; the immediate cause of most of our brawls and disturbances, and of a great proportion of our crime and pauperism. The Legislative Assemblies of our Territory recognizing these facts, have had two leading purposes in view in their various enactments: *First.* To compel those engaged in the sale of intoxicating liquors, to be drank in, upon, or about the premises where sold, to submit to some wholesome restraints; making them liable in damages to any one injured thereby, and requiring them to put themselves in a position of pecuniary responsibility by filing a bond in the penal sum of three thousand dollars. *Second.* To enable counties and incorporated towns and cities to derive some revenue from those engaged in keeping dram shops and tippling houses.

If men will insist on crowding the calendars of our criminal courts, making necessary a larger police force in our towns and cities to keep the peace, and multiplying the number of paupers to be charges on the public treasury, it does seem reasonable that they should be required to contribute something toward relieving the burden which the curse of intoxicating drinks lays on community. Let us examine briefly these statutes, and see whether, even under the rules of strict construction, the facts alleged in these indictments do not constitute a public offense.

The first seven sections of chapter 30, laws of 1867–8, have been repealed, and need not be considered; the remaining

sections will be referred to hereafter. Section 1 of chapter 25, laws of 1872–3, approved January 10, 1873, provided that it should be unlawful for any person to sell intoxicating liquors to be drank in, upon, or about the premises where sold, without first having obtained a license and given a bond. Section 2 makes it unlawful to sell to minors, except upon the written order of parents, etc., or to persons intoxicated, or who are in the habit of getting intoxicated. Section 4 reads as follows: " For every violation of the provisions of the *first and second* sections of *this act,* every person so offending shall forfeit and pay a fine of not less than $20, nor more than $100." The Legislature of 1874–5 passed another act on this subject,— chapter 21, entitled "An act *to amend* an Act, entitled 'An act to provide against the evils resulting from the sale of intoxicating liquors in the Territory of Dakota,' approved January 10, 1873." The first section of this act commences as follows: " Be it enacted, etc., that section one of an Act entitled, etc., approved January 10, 1873, *be amended so as to read as follows.*"

As the provisions of section four, act of 1872–3, applied to sections one and two of that act, and as section one has been repealed by the enactment of a substitute, it is now contended that there is no punishment prescribed for a violation of the provisions of the act of 1874–5. There might be something in this position, were this act of 1874–5 an independent, isolated act, perfect and complete in all its provisions, and not amendatory to the act of 1872–3, nor necessarily connected with its provisions by its very language, as well as its relation to the same subject-matter, and having the same object and purpose. If the last act had amended the former one by reducing the penalty in the bond, or by enlarging or abridging its conditions, or had it struck out all of section one relating to a bond, and left it simply unlawful to sell without license, or had it struck out all relating to a license, and made it unlawful to sell without first filing the bond, would not the provisions of section four still have applied? Certainly so clear a proposition could not be questioned. If it could be amended piece-meal, now a part and then a part, until it might be an entirely new section, why might it not

be done by one act, by at once striking out and inserting, or amending so as to read entirely different?

I think no principle plainer or better settled, than that an amendment becomes a part of the original act, whether it be the change of a word, figure or line; or the striking out of an entire section; or striking out and inserting, or in any other way modifying or altering its provisions.

Where an amendatory act sets forth the entire sections amended, they are to be construed as introduced into the place of the repealed sections, and in view of the provisions of the original act after such introduction. (*McKibben v. Lester*, 9 Ohio N. S., 627.) Thus, the words in the amendatory act " under the limitations herein provided," must be held to apply to the limitations of the original act after the amended sections are in place. (*Ibid*, also, *Conrad v. Nall*, 24 Mich., 275.) The amendment of a statute by a subsequent one operates, as to all acts done subsequent thereto, as though the amendment had been a part of the original statute. (*Holbrook v. Nichol*, 36 Ills., 161.) And in England it has been held that where a new proviso was substituted for an old one in nearly the same terms, the new proviso and the original statute must be read as one act, *i. e.*, as though the proviso had originally been in the amended form. (*Queen v. St. Giles*, 3 E. & E., 224.) I therefore hold that section one of chapter 21, laws of 1874–5, was enacted in lieu of and took the place of section one, chapter 25, laws of 1872–3, the new being substituted for the old section, and that this new section, and the old statute into which it has been inserted, must be read as one act, as though it originally had been in the amended form, and any one violating its provisions is punishable as provided in section four.

Again, it is contended that defendants cannot be punished unless guilty of a violation of *both* sections one *and* two, a violation of the provisions of one of these sections alone not being sufficient, as section four provides a punishment for any one violating the provisions of the first *and* second sections. This objection savors entirely too much of captious hypercriticism, and I shall dispose of it with a very few

words. Can it be supposed for a moment that the Legislature intended to permit parties to sell, to be drank on the premises, without license or bond, provided they did not sell to the persons mentioned in section two? Again, section two is an absolute prohibition of the sale of intoxicating liquors, in any quantity and for any purpose, to the persons therein named, subject to an exception in case of minors. Now can it be that the Legislature intended that this section might be disregarded, and its provisions violated with perfect impunity, and with complete immunity from the possibility of punishment, provided the offender did not at the same time sell to be drank on the premises? I think the clear intention—and such is certainly the most reasonable, in fact the *only* reasonable construction—was to provide for the punishment of the violation of either section. Any other construction would render the statute a dead letter. Even a penal law should not be construed so strictly as to defeat the obvious intention of the Legislature. (*American Fur Company v. United States*, 2 Peters, 358.) *And*, and *or* are convertable as the sense of the statute may require. (*Townsend v. Read*, 10 C. B. (N. S.) 308; *Boyles v. Murphy*, 55 Ills., 236.) And this is the rule even in a criminal statute. (*State v. Myers*, 10 Iowa, 448; *Miller v. The State*, 3 Ohio St., 476.)

Some question has been made as to the authority that should grant the license. This we think sufficiently answered by the provisions of section one, third *proviso*: "It shall be competent and lawful for both the county commissioners of any county, and also the mayor and city council, or other authorities of any town or city situated therein, to require the payment of the license herein provided." The bond is required to be given to the commissioners of the county; they are the fiscal agents of the county, authorized to transact all its business; and if empowered to take the bond, and approve the same, and receive and receipt, through the treasurer for the money, it follows as the most natural sequence that they should issue the license, and the law clearly contemplated that, although it might, perhaps, have been stated in language more concise and definite.

I therefore arrive at the conclusion that it is a public offense

under the statutes of this Territory, to sell intoxicating liquor to be drank in, upon, or about the premises where sold, without first having obtained a license and given bond.

On the question of jurisdiction I have only this to say: It will be borne in mind, that in our view, as before stated, chapter 25, laws of 1872-3, and chapter 21, laws of 1874-5, are to be read and construed as one act, the latter being an amendment to the former. When by section 2 of the latter act, sections 89 and 10 of chapter 30, laws of 1867-8, were revived and re-enacted, they became a part of that act to all intents and purposes, the same as if they had been re-written *verbatim et literatim* and embodied therein; and the Legislature by re-enacting the provisions of these sections, restored to the District Courts concurrent jurisdiction with justices of the peace, in all prosecutions arising under the act of 1872-3, as amended, which had been taken away by the provisions of chapter 27, laws of 1872-3.

I now come to the consideration of the objections made to the sufficiency of the indictment, which counsel have put in the following form in their demurrer, which is the same in each case: " It does not substantially conform to the requirements of the statute, in this:—it is not direct and certain as regards the particular circumstances of the offense charged; alleging neither the premises where sold, the person to whom sold, nor the kind or quantity of intoxicating liquors charged to have been sold."

As a general rule it is sufficient to charge the offense in the language of the statute, and this is especially true of purely statutory offenses. (1 Bishop's Crim. Pro., § 611, and numerous authorities there cited.) Now, what is the language of the statute under which these indictments are drawn? " It shall be unlawful for any person or persons, by agent or otherwise, without first having obtained a license and given a bond, to sell in any quantity intoxicating liquors to be drank in, upon, or about the premises where sold, etc." The indictment charges the defendants with unlawfully and knowingly selling intoxicating liquors to be drank in and upon the premises where sold, without first having obtained a license and given bond as required by law. In this the

district attorney has followed almost the exact language of the statute, and yet it is claimed not to be sufficient.

Section 215, Code of Criminal Procedure, is as follows: " The indictment must be direct and certain, as it regards:— 1. The party charged. 2. The offense charged; and 3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

In these indictments there is no question as to the certainty of the parties charged. The offense charged is the selling of intoxicating liquors to be drank in and upon the premises where sold, without first having obtained a license and given bond. Are there any other circumstances necessary to constitute a complete offense? It is no crime in this Territory to sell intoxicating liquor, or to sell it to be drank on the premises where sold, but the gist of the offense consists in so selling it without first having obtained a license and given a bond. It is no crime under the United States statutes to engage in the business of a wholesale or retail dealer in tobacco and cigars, or spirituous or malt liquors, but it becomes criminal when engaged in without first having paid the special tax. And in all prosecutions for violations of these United States statutes, I know of no precedent or authority that requires the particular premises where and the person to whom the liquor, tobacco or cigars were sold, to be stated in the indictment.

So also in relation to the sale of liquor to an Indian, under the charge of an Indian superintendent or agent. In no case which I have been able to find is there any question as to the particular premises where sold. In some cases the name of the Indian is given, in others it is not, and both forms have been held good. (*United States v. Holliday*, and *Same v. Haas*, 3 Wall., 407.) It does seem to me that there can be no reason for insisting upon any greater particularity in the one case than in the other. All that has been said in relation to the necessity of a certainty that will enable defendants to plead a former acquittal or conviction, applies with equal force to indictments under the United States statutes referred to. The authorities are irreconcilably conflicting, both the

courts and text writers. Wharton lays down the rule that in an indictment for selling spirituous liquor in small quantities without a license, it is unnecessary to aver to whom sold, or the number of persons. (2 Wharton's Crim. Law, § 2445, and cases cited.) This rule has been adopted in several of the States. (*State v. Adams*, 17 Wendell, 475; *Osgood v. The People*, 39 N. Y., 449; *State v. Gummar*, 22 Wis., 422; *State v. Rice*, 38 Ills., 435; *Commonwealth v. Baird*, 4 S. & R., 141.) The Supreme Courts of Missouri and Texas have vacillated, while in a great number of States it is held that the name of the person to whom sold should be averred. (See also 1 Bishop's Crim. Pro., § 548.) One fruitful cause, doubtless, of this conflict of authority, grows out of the difference in the language, construction and phraseology of the various statutes on which the decisions are based. I can see no reason under our statute why the name of the party to whom sold, should be alleged; and in arriving at this conclusion, I think I follow the better reasoned cases, as well as the clearer and steadier light of the Supreme Court of the United States, in its construction of statutes, and the forms of proceedings which it has approved, analogous to those under consideration.

These indictments allege a *sale* and under this averment, all the facts necessary to constitute a sale, can be proven. A sale is, by our Civil Code, §§ 1855, 1856, defined to be " a contract " by which, for a pecuniary consideration, called a price, one transfers to another an interest in property. But section 5, chapter 25, laws of 1872–3, provides that " the giving away of intoxicating liquors, or other shift or device to evade the provisions of this act, shall be deemed and held to be an unlawful selling, etc." Bishop (1 Vol. Crim. Pro., § 514) says: " Suppose a statute makes penal an unlicensed 'sale' of intoxicating liquor, it may be a question whether the word 'sale' or 'sold,' the exact word used in the statute, will sufficiently describe the act of selling; or on the other hand, whether the indictment must specify the things done, which constitute the sale." This is the exact point insisted upon by counsel for plaintiffs in error in these cases. " Now," continues Mr. Bishop in the same connection, " there enters always into a sale the element of price; and in Indiana, the

court held that every indictment under this statute must set out the price; because 'price is an essential element in the idea of a sale.' Said Stuart, J.: 'Every fact essential to be proved should be alleged. * * * Perhaps, had all the facts been stated, the court might have considered it a barter.'" (*Divine v. The State*, 4 Ind., 240, and other cases decided by that court.) Bishop concludes by saying: "The course of things in most of our States, has been to accept as good the particular allegation, which the Indiana court decided to be bad." (*Clare v. The State*, 5 Iowa, 509; *Wrocklege v. The State*, 1 Iowa, 167; *vide*, also, 15 Mo., 478; 24 ibid, 363; 8 Met., 530; 23 Pick, 275; 6 Grat., 667; 3 Hill, S. C., 187, and 17 Ills., 101.) But under our statute no price need be paid in order to constitute the offense; if the liquor is given away, or disposed of by any other shift or device, to evade the statute, it is an unlawful selling under its provisions, and the question as to whether it might not be a barter, suggested by the Indiana court, becomes wholly immaterial.

Again: Why should the particular kind of liquor be averred? The statute uses the comprehensive phrase, "intoxicating liquors;" that includes all kinds of liquors that will produce intoxication, and makes the sale of all alike unlawful; and it matters not what particular kind is sold, the offense is the same. Neither can it be material to the defense, except that it may close a very wide door through which, otherwise, the guilty might escape. Were the prosecution required to allege the specific kind of liquor sold, it might be very difficult to prove it, in these days of adulterations and villainous concoctions. Some courts have held, under statutes, making it unlawful to sell without license, liquors specified, such as wine, gin, brandy, whisky, &c., the indictment must aver the particular kind. But where the statute speaks of it only as "intoxicating liquors," an averment any more specific than that in an indictment, is not required. Neither is it necessary to allege the amount sold. The statute says "in any quantity to be drank in, upon, or about the premises where sold." It is, therefore, as much a violation of the statute to sell one drink as one quart for the purpose men-

tioned. But now it may be asked, what is the meaning of subdivision 3 of section 215, Code of Criminal Procedure, which requires an indictment to contain "the particular circumstances of the offense charged, when they are necessary to constitute a complete offense?"

Section 2, chapter 25, laws of 1872–3, makes it unlawful to sell to minors, except on the written order of parents, etc., or to persons intoxicated, or who are in the habit of getting intoxicated. Here the offense is more particularly against the person to whom the liquor is sold. It is not unlawful to sell liquor, provided it is not sold to be drank on the premises where sold, or to sell to be drank on the premises, if the seller have a license. Therefore to constitute a complete offense under section 2, *supra*, other circumstances of the selling must be given. If the sale was made to a minor, that fact must be stated, and the existence of an order from a parent, etc., negatived. If to a person intoxicated, or who is in the habit of getting intoxicated, the fact must be averred. And as the gist of the offense consists in the sale to the particular classes of persons mentioned, the name of the person to whom sold must be averred if known, if unknown, so stated, in order that he may be identified, and evidence introduced on the material point of minority, intoxication, or habits of inebriety.

Numerous other examples might be given, but as we find in the statute under consideration, an illustration so apt and satisfactory, I do not deem it necessary to pursue the inquiry further.

One point further only remains to be noticed in the case against Walbaum and Becker. They were jointly indicted, and it is now urged that but one judgment could be entered against them, or one fine assessed against them both. This is not the law. Two persons may be jointly guilty and jointly convicted of the offense of retailing spirits. (Wharton's Crim. Law, § 2445.) If they may be jointly guilty and jointly convicted, and yet but one judgment be pronounced, or but one fine imposed, which party shall bear the punishment? If committed until fine and costs are paid, which one

shall be sent to jail? Nothing is better settled, in either law or ethics, than that he who violates the law, whether alone or jointly with others, must for himself and alone bear the penalty.

The same doctrine is also laid down by Bishop on Crim. Pro., Vol. 1, § 469: " It is common to indict jointly for such offenses as the selling of intoxicating liquor without license," and cites the case of *Commonwealth v. Sloan*, 4 Cush., 52; *vide*, also, *State v. Caswell*, 2 Humph., 399. Bishop, in his work on criminal law, Vol. 1, § 957, sums the whole question up as follows: " Thus where a pecuniary penalty is imposed by statute for the sale of intoxicating liquor without license, all who participate in a particular sale may be proceeded against jointly, whether by action or indictment. But if by indictment, the judgment is several against each for the whole penalty, while if by action, it is joint, and the penalty can be collected only once out of all;" citing numerous authorities.

We find no error in the record before us, and the judgments are, therefore,

