# SEPTEMBER TERM.

## CHARLESTOWN.

### SWISHER v. MALONE.

Submitted June 26, 1888.—Decided Sept. 15, 1888.

1. BASTARDY—PROSECUTION—EVIDENCE—CHASTITY OF COMPLAINANT.
    In a prosecution for bastardy against the putative father of a bastard child, under the provisions of chapter 80 of the Code, the character of the complainant for chastity is not involved in the issue. (pp. 444, 445.)

2. BASTARDY—EVIDENCE—INTERCOURSE WITH OTHERS THAN DEFENDANT.
    Upon the trial in such a proceeding the defendant will not be permitted to introduce evidence to prove that the complainant has at any time had carnal connection with other men, unless such connection has occurred within such a period before the commencement of her gestation that it is possible that one of such other persons may have been the father of the child. (p. 445.)

3. BASTARDY—IMPEACHMENT OF COMPLAINANT.
    If upon such trial the complainant upon the witness-stand, in her examination in chief or upon cross-examination, has testified that she has never had connection with any man other than the defendant, he can not, for the purpose of impeaching her testi-

mony, or of showing that he is not the father of the child, intro-
duce testimony tending to show that she had any such carnal con-
nection with other men, unless it has occurred so near the com-
mencement of her gestation that some person other than the de-
fendant may be the father of the child.  (p. 445.)

4.  NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—MOTION.

A motion to set aside a verdict and award a new trial, founded
upon an affidavit of newly-discovered evidence, which fails to
show the character, relevancy and materiality thereof, will be
overruled under the rule established by this Court in the fifth
point of the syllabus in *Betsall's Case*, 11 W. Va. 703, which is re-
affirmed in this case.  (p. 446.)

*Lee P. Watson* for plaintiff in error.

*Attorney-General Alfred Caldwell* for defendant in error.

WOODS, JUDGE:

This proceeding was founded upon a warrant for bastardy
issued on the 11th of December, 1882, upon the complaint of
Louisa J. Swisher, by a justice of the peace of Marion county,
accusing Lee L Malone with being the father of a male bas-
tard child of which she was delivered in said county on the
20th day of November, 1882.   Having entered into the recog-
nizance required by law, the defendant appeared at the next
term of the Circuit Court of said county, and pleaded " not
guilty."   The issue upon this plea was afterwards, on the
6th of December, 1883, tried by a jury, who returned the
following verdict: " We, the jury, find the defendant guilty."
The defendant moved the court in arrest of judgment, and
to set aside the verdict and award him a new trial, and filed
in partial support of said motion for a new trial the follow-
ing affidavit:

" This day came Lee L. Malone, and upon his oath says
that he is the defendant in the above-entitled action, and
that the jury empaneled therein did on the —— day of
December, 1883, in the Circuit Court of Marion county, ren-
der a verdict finding him guilty of the paternity of the bast-
ard child of which the plaintiff was heretofore delivered.
Affiant says that since the trial aforesaid of the cause afore-
said he has discovered new evidence such as that by no de-
gree of diligence could have been secured at the former

trial; that said evidence is material, and such as ought to produce upon another trial a verdict different from the said verdict hereinbefore rendered upon the merits. Affiant says that he has discovered sufficient unimpeachable evidence to show that no spelling-school was held at the Watson school-house on the night of February 10, 1882, as proved upon said trial, and upon which proof, together with proof that this affiant was then and there at said school-house, the said plaintiff recovered said verdict, but that said spelling-school was held upon the ——— day of ———, 18—, and that affiant was not then at said school as aforesaid. Affiant also has discovered new evidence proving that the said plaintiff did not live in said Marion county for one year next preceding the date of the birth of her said child or of her accusation of affiant's paternity thereof before the justice. And this affiant says that at the said trial of said cause it was not proved that the child of which said plaintiff has been delivered was born in said county of Marion aforesaid.—L. L. MALONE. Subscribed and sworn to before me this 20th day of December, 1883.—CLARENCE L. SMITH, Clerk."

These several motions the court overruled, and entered judgment upon the verdict, that the defendant pay to the County Court of Marion county, for the maintenance of the child, $50.00 a year for each year, payable at the end of the year, from the 11th of December, 1882, to the 20th day of November, 1889, unless it sooner die, and that said defendant shall give bond in the penalty of $700.00, with such sureties as may be deemed sufficient by the court for the performance of this order, and that the plaintiff, Louisa J. Swisher, recover from the defendant, Lee L. Malone, the costs by her in her prosecution expended. During the trial the defendant excepted to certain rulings of the court, which were saved to him by his four bills of exceptions numbered, respectively, 1, 2, 3, and 4, which set out the grounds of error complained of by the defendant in his assignment of errors. To this judgment a writ of error has been allowed.

The errors complained of in the defendant's first, second, and fourth bills of exceptions may be considered together.

The first bill states that after the plaintiff had introduced evidence tending to show that the defendant was the father of the bastard child of which she was delivered on the 20th day of November, 1882, the defendant offered evidence tending to show that the general character of the plaintiff for chastity is bad, and for a long time before the conception and birth of said child was bad, which testimony so offered by the defendant the court rejected. The second bill of exceptions stated that the plaintiff had introduced the evidence in the first bill of exceptions, and herself had testified in answer to questions propounded to her on cross-examination, that she had never carnally known any man other than the defendant. The said defendant offered to contradict her by proving numerous acts of carnal intercourse between her and numerous other persons, occurring frequently during a period of three years before the birth of said child, but not within such period of time as from such intercourse said child could have been begotten, which testimony so offered the court rejected. The fourth bill of exceptions sets out that after the plaintiff had testified on cross-examination that she had not had carnal connection with any other man than said defendant, he proposed to contradict her by proving numerous acts of carnal intercourse between her and numerous other persons. To the introduction of this testimony the complainant by counsel objected, unless from the time of such connection it might be possible that by such connection some such third party might be the father of the child of which she was delivered, and the court sustained said objection with said qualification.

This case presents for our consideration two important questions: *First*, whether, in a prosecution for bastardy under our statute, the character of the complainant for chastity is involved in the issue. *Second*, whether, for the purpose of impeaching her credibility as a witness by cross-examination or otherwise, or of showing that he is not the father of the child, it is competent for the defendant to introduce evidence to prove that she has at any time had carnal connection with other men, unless such connection has occurred within such period before the commencement of her gestation as to render it possible that some one of such

other men may have been the father of the child. The prosecution provided for by chapter 80 of the Code to charge the putative father with the support of his illegitimate child is in no sense a criminal prosecution, nor does it pretend to impose upon the accused any punishment for his unlawful act. Its only purpose is to prevent the illegitimate child from becoming a charge upon the county, by compelling the father to bear the burden of its maintenance and support in its tender infancy, which would otherwise in many instances fall upon the public.

The proceedings under the Code to effectuate this purpose are simply and summary. The party accused is arrested upon a warrant issued by a justice, founded upon the examination of the woman under oath, taken before a justice, and there recognized with sufficient surety to appear at the next term of the Circuit Court of the proper county, to answer said charge, and to abide by and perform the order of the court in relation thereto. Upon pleading "not guilty," the issue thereon is tried by a jury, if not waived by the parties, and, if the defendant is found guilty, it is the duty of the court to order him to pay to the County Court, for the maintenance of the child, such sums as it may deem proper for each year until such time as the court may appoint, unless the child sooner die; and shall order the father to give bond in such penalty and with such sureties as it may deem sufficient for the performance of such order; and shall order him to jail until such bond be given in the court or filed in the clerk's office, with sufficient sureties, to be approved by the court or clerk. Code, ch. 80, § 4.

It will thus be perceived that no question of damages, fine, or other punishment is involved in the proceeding. The only question involved in the issue is whether the defendant is the father of the child, and when that fact is established by the verdict of the jury finding him guilty, then it becomes the duty of the court to charge him with the payment of such annual sums for such term of years as will be sufficient for the reasonable maintenance and support of the child, and thereby save the county harmless from the result of his unlawful act during the period fixed by the court. This being the sole aim and purpose of the statute, it will

be perceived that it becomes wholly immaterial whether the
mother of the illegitimate child before, or the time it was
begotten, was good or bad, chaste or unchaste. In either
case the burden imposed upon the county for the support of
her illegitimate child would be the same, and if only the
fathers of illegitimate children begotten of women of pre-
viously chaste character could be charged with their sup-
port, then would the most lewd and licentious of both sexes
be relieved from all responsibility for the maintenance and
support of their illegitimate offspring.

In determining whether the defendant is or is not the
father of an illegitimate child, it becomes and from the na-
ture of the case must be immaterial whether the previous
character of the mother for chastity was good or bad, as the
injury to the community is the same in both cases, and
therefore her character for chastity is not involved in the
issue in this proceeding. If, then, her character for chastity
be not involved in the issue upon the plea of "not guilty"
in this proceeding, it follows that if the complainant, when
examined as a witness, whether in chief or upon cross-exam-
ination, denies having had carnal connection with any other
man than the defendant, it is wholly immaterial to the issue
whether her testimony in this particular be true or false, un-
less it be shown that such carnal connection with other men
has taken place at or so near the time of the commencement
of her gestation that it is possible that some one of such
other men may have been the father of the child.

But, if the defendant can do so, it is competent for him to
prove that she has had such carnal connection with other
men at or so near the commencement of her gestation that
one of them may have been the father of the child, for the
proof of such fact would greatly weaken the force of her
testimony. And in case she had on the witness stand, either
in her examination-in-chief or upon cross-examination, de-
nied that she had ever had carnal connection with other
men than the accused, and she was afterwards contradicted
on that point, or the fact of such connection with others
about that period was proved by affirmative evidence, the
force of her testimony would be weakened, if not destroyed ;
but to have this effect, or any effect at all to impair the

force of her testimony, the proof of this carnal intercourse with other men must be confined to a period so near the commencement of her gestation that one of such other persons could have begotten the child. *Phillips* v. *Hoyle,* 4 Gray 568; *Bowen* v. *Reed,* 103 Mass. 48; *Eddy* v. *Gray,* 4 Allen 435; *Parker* v. *Dudley,* 118 Mass. 605; *Com.* v. *Moore,* 3 Pick. 194; *Sabins* v. *Jones,* 119 Mass. 167; *Ronan* v. *Dugan,* 126 Mass. 176.

It is apparent that none of the acts of carnal intercourse with other persons than the defendant, referred to in his second and fourth bills of exceptions, took place at such a time that from such connection it was possible that any of such other persons could have been the father of the child of which the plaintiff was delivered on the 20th day of November, 1882. It follows, therefore, that the Circuit Court did not err in excluding from the jury the testimony offered by the defendant, as set forth in his first, second, and fourth bills of exceptions.

The defendant's motion in arrest of judgment was properly overruled, for there was no error or even any irregularity in the complaint, warrant, or any of the proceedings thereon, and nothing in support of this motion was offered to the trial court or suggested in this Court.

Did the court err in overruling the defendant's motion to set aside the verdict and award a new trial on account of the matters set up in his affidavit filed in support thereof? Three grounds are alleged in the affidavit for setting aside the verdict, and all of them purport to be newly-discovered evidence. The first is that " since the trial he has discovered new evidence which no degree of diligence could have secured at the former trial; that said evidence is material, and such as ought to produce upon another trial a different verdict." What the substance of this newly-discovered evidence is, or by whom it is to be proved, or where the witness resides, or why it was not procured on the former trial, or whether any effort was made or diligence used to obtain the same, or whether the same is new evidence or merely cumulative, does not appear. The second ground is that he has discovered sufficient unimpeachable evidence to show that no spelling-school was held at a certain time and place, and

that defendant was not there, as proved on the trial, but that the spelling-school was at a different time. As it nowhere appears what evidence was introduced on the trial, we are unable to perceive the relevancy or materiality of this newly-discovered fact, even if the same should be proved.

The last ground is that he has discovered new evidence proving that the plaintiff did not live in Marion county for one year next preceding the date of the birth of her child, or of her accusation against the defendant. The statute does not require that the complainant shall have resided for one year preceding the birth of her child in the county in which her complaint is made, or that the child shall be born there. It is immaterial where she lived at the time of its birth or afterwards, provided only that she shall have resided in the county in which the complaint is made for one year preceding said complaint, and that the child is not then " three years old· or upwards." As the record shows the complainant was examined as a witness on the trial, the defendant had it in his power to prove by her where she lived during the year preceding the date of her complaint, if he desired to do so, and any newly-discovered evidence on this point must of necessity be merely cumulative.

The jury having found the defendant guilty, we must, in the absence of anything in the record to the contrary, presume that every fact necessary to warrant such a verdict was sufficiently proved. The character of newly-discovered evidence sufficient to authorize the court to set aside a verdict and award a new trial has been repeatedly passed upon by this Court, and we feel no disposition to depart from rules so well established and understood.

In *State* v. *Betsall*, 11 W. Va. 703, this Court established the rule that " to authorize the granting of a new trial on the ground of after-discovered evidence, four things are necessary : (1) The evidence must have been discovered since the former trial. (2) It must be such as reasonable diligence on the part of the party asking it could not have secured at the former trial. (3) It must be material in its object, and not merely cumulative, corroborative, or collateral. (4) It must be such as ought to produce on another

trial an opposite result on the merits." These rules have been approved and applied in *State* v. *Williams*, 14 W. Va. 851; *Varner* v. *Core*, 20 W. Va. 473; *Dower* v. *Church*, 21 W. Va. 23.

Applying these rules to the affidavit filed by the defendant, it is apparent that he has shown no good cause for setting aside the verdict and granting him a new trial, and his motion for that purpose was properly overruled. The judgment of the Circuit Court is therefore affirmed, with costs and $30.00 damages.

Affirmed.