STATE Ex Rel. KING (*nee* Stewart,) Respondent, v. HOPPS, Appellant.

(182 N. W. 632.)

(File No. 4764.   Opinion filed April 25, 1921.)

**Bastardy—Complaint Re By Child's Mother Unmarried at Time of Pregnancy, Married When Suit Brought, Whether Maintainable—Statute Construed—Complaint Sustained.**

Under Sec. 2981, Code 1919, providing that "'When an unmarried woman who shall be pregnant or delivered of a child which by law would be deemed a bastard shall make complaint, etc.," held, that the word "unmarried" refers to status of the mother at time when she became pregnant and was delivered

of the child in question, and not to her situation at time of making complaint. So **held**, where complainant was single at time of pregnancy and delivered of child, but was married at time of bringing suit; and a complaint stating the facts accordingly was properly sustained on demurrer.

Appeal from Circuit Court, Day County. HON. FRANK ANDERSON, Judge.

Action by the State of South Dakota, on the relation of Loella King, formerly Loella Stewart, against Chester Hopps, for support, maintenance, etc., by defendant of an alleged bastard child. From an order overruling a demurrer to the complaint, defendant appeals. Affirmed.

*Lewis W. Bicknell,* for Appellant.

No appearance for Respondent.

Appellant cited: State ex rel. Berg v. Patterson, (S. D.) 100 N. W. 162; State ex rel. Kiihl v. Chambers, (S. D.) 159 N. W. 113; Blush v. State, 46 Pac. 185; Vo. 7, C. J. 972, 973, note 27; Jones v. Davies (Eng. 1901) 1 K. B. 118; Peatfield v. Childs (Eng.) 63 J. P. 117; Haworth v. Gill 30 Ohio St. 627; Welsh v. Cliburne 94 Miss. 443-444, 49 S. W. 184, 136 Am. S. R. 587.

McCOY, J.   This action was instituted under the bastardy laws of this state, the complainant being the mother. From an order overruling a demurrer to the complaint, the defendant, the putative father, appeals. The complaint, among other things, contained the following allegations: That Loella King, formerly Loella Stewart, on the 9th day of June, 1914, was delivered of a female child, and that for more than one year prior thereto, and at the time of the birth of said child, she was a single woman; that she charged said Charles Hopps with being the father of said child; that said child is now alive, and was born a bastard. To this complaint the defendant interposed a demurrer on the ground that the same does not state facts sufficient to constitute a cause of action, in that it does not allege that the complainant, at the time of the making and filing of said complaint, was an unmarried woman. Section 2981, Code 1919, provides that—

"When an unmarried woman who shall be pregnant or delivered of a child, which by law would be deemed a bastard, shall make complaint," etc.

This brings us to the proposition as to whether or not under

this statute, in a case where the mother of the child was unmarried at the time she became pregnant and at the time she was delivered of the child that would be deemed a bastard, she can maintain such a suit where, after the birth of such child, she became married to a person other than the putative father of her child. In the case of State ex rel, Kiihl v. Chambers, 37 S. D. 556, 159 N. W. 113, this court held that it was imperative, under this statute that the mother must have been unmarried at the time she became pregnant and at the time of the birth of the child. There is some diversity of judicial opinion upon the precise question here involved based upon statutes similar to ours. Said section 2981, Code 1919, first came into the statute law of this state as section 1 of chapter 24, Laws of 1893, and is so far as it relates to the question in the case at bar, identical in language with section 1 of the Bastardy Act of the state of Illinois (Hurd's Rev. St. 1919, c. 17,) from which the act of this state was evidently substantially copied. Said Illinois Bastardy Act became a law in 1872, and in 1884, in the case of People ex rel. v. Volksborf, 112 Ill. 292, the Supreme Court of that state held, and in the opinion said:

This case involves a construction of the first section of the Bastardy Act, which provides, 'That when an unmarried woman who shall be pregnant, or delivered of a child which by law would be deemed a bastard, shall make complaint to a justice of the peace,' etc., accusing one with being the father of such child, the justice shall issue his warrant, etc. It is contended by appellee that the mother of a bastard child must be an unmarried woman at the time she makes complaint, while appellant claims that the word 'unmarried,' in the section, is to be referred to the pregnancy or delivery of the mother.

"The statute authorizes the making of the complaint when a single woman is pregnant with child. In that case the complainant must be 'unmarried' at the time of making the complaint. It also authorizes the institution of the prosecution when an unmarried woman has been delivered of a child, in which case it is not necessary that she be unmarried when she makes the complaint. The marriage of the mother of an illegitimate child, after delivery, to one not the father, cannot affect the status of such child and her husband will not be liable for its support. Brush v.

Blanchard, 18 Ill. 46; Mowbry v. Mowbry, 64 Ill. 383. The true construction of the statute is that the mother shall be unmarried at the time the child is born and the word 'unmarried,' in the law, does not properly relate to the time of making the complaint."

Again in Alminowicz v. People ex rel. Zelvic, 117 Ill. App. 415, the Illinois courts sustained this construction of this statute.

In Parker v. Nothomb, 65 Neb. 308, 91 N. W. 395, 93 N. W. 851, 60 L. R. A. 699, the Supreme Court of Nebraska said that the word "unmarried" as used in the Nebraska statute (a statute very similar to that of this state) properly refers to the status of the mother at the time her child is begotten and born, and does not relate to her situation at the time of making the complaint therein referred to. In rendering this opinion the learned court, among other things, said:

"The word 'unmarried' * * * does not properly refer to the mother's status at the time of making the complaint in bastardy, but only to such status at such time as will affect the question of the legitimacy of the child, or the liability of the husband to support it. * * * It is hard to conceive of any good reason, and we know of none, for saying that an illegitimate child should be denied the protection afforded by the statute because the mother, subsequent to its birth, enters into a contract of marriage with one other than its father. The law does not discourage marriages, and certainly the Legislature did not intend to throw any impediment in the way of the unfortunate mother who had given birth to an illegitimate child to enter into a marriage alliance. It cannot be doubted, as was held to in the former opinion, that the husband of a woman contracting such marriage would sustain the legal relation only of stepfather to the illegitimate child, and would be under no legal obligation for its nurture, support, and maintenance. The child notwithstanding such marriage is in the same attitude with respect to the law, and in the same need of its beneficent provisions as before the marriage. It is as much an object of legislative solicitude as other innocent unfortunates of its kind whose mothers have contracted no such alliances. There is in fact no substantial reason, nor can any be advanced, why the Legislature intended to deny to the illegitimate child, whose mother after its birth has married the protection of the

statute and yet extend such protection to those in exactly the same condition whose mothers have not married."

We are of the view that the interpretation placed upon this statute by the Illinois, Nebraska, and other courts is the true and sound construction; that the word "unmarried" as used in said statute properly refers to the status of the mother at the time when she became pregnant and was delivered of this child, and not to her situation at the time of making the complaint. We are therefore of the opinion that the complaint in question stated a good cause of action, and that the trial court committed no error in overruling said demurrer.

The order appealed from is affirmed.