STATE *ex rel.* SHARLENE DAVIS CROUSER

v.

DONALD RAY MERCER

(No. 10750)

Submitted April 17, 1956.        Decided May 15, 1956.

694

*John G. Fox,* Attorney General, *Harold A. Bangert, Jr.,* Assistant Attorney General, *Paul E. Parker, Jr.,* Assistant Prosecuting Attorney, *Harrison Conaway,* Prosecuting Attorney, for plaintiff in error.

*A Blake Billingslea, Herschel Rose,* for defendant in error.

HAYMOND, JUDGE:

This bastardy proceeding, in which a warrant for the arrest of the defendant, Donald Ray Mercer, was issued on September 25, 1950, by a justice of the peace of Marion County upon the sworn complaint of the relator, Sharlene Davis Crouser, accusing the defendant as the father of her bastard child born November 3, 1949, was tried and determined in the criminal court of that county on September 24, 1951.

The defendant made a motion to quash the warrant on the ground that the complaint and the warrant show that at the time the warrant was issued Sharlene Davis Crouser, the complaining witness, was a married woman and that they fail to show that she had not lived or cohabited with her husband for at least one year prior to the birth of the child of which she was delivered on November 3, 1949. The criminal court overruled the motion and the defendant entered his plea of not guilty. Upon the trial the jury returned a verdict of guilty and the court, having overruled the motion of the defendant to set aside the verdict and grant him a new trial, entered judgment that the defendant pay to the relator the expenses incurred in connection with the birth of the child, the sum of twenty five dollars per month from November 1, 1951, until the further order of the court, and costs. Bills of exceptions incorporating the evidence and the proceedings upon the trial of the case were signed, certified and saved to the defendant and made a part of the record by an order entered by the judge of the criminal court on December 5, 1951, within sixty days from the adjournment of the term of court at which the final judgment was rendered.

Upon the petition of the defendant, filed February 6, 1952, the Circuit Court of Marion County granted a writ of error and supersedeas on June 16, 1952, to the judgment of the criminal court. By order entered January 8, 1954, the circuit court set aside the verdict of the jury, awarded the defendant a new trial, and remanded the case to the criminal court for that purpose. The order of the circuit court suspended the execution of its judgment for a period of sixty days from the adjournment of the court to enable the plaintiff, the State of West Virginia, to apply to this Court for a writ of error to the judgment of the Circuit Court. The State, however, did not apply to this Court for a writ of error to the judgment rendered by the circuit court on January 8, 1954, and the case remained on the docket of the criminal court for a new trial.

After the remand of the case and during the regular January 1955 term of the criminal court, by order entered February 2, 1955, that court sustained the motion of the defendant to quash the warrant, on the ground that it is insufficient in law, and dismissed the case. Three bills of exceptions, incorporating the evidence and the proceedings contained in the bills of exceptions previously signed and certified by the judge of the criminal court on December 5, 1951, and the proceedings in the criminal court upon the remand of the case, were signed, certified and saved to the State and made a part of the record by an order entered by the judge of the criminal court in vacation on March 26, 1955, within sixty days from the entry of its final judgment quashing the warrant and dismissing the case.

On April 1, 1955, the State applied to the circuit court for a writ of error and supersedeas to the judgment of the criminal court entered February 2, 1955; and by order entered April 5, 1955, the circuit court denied the application and refused to grant the writ of error and supersedeas prayed for by the State.

To the judgment of the circuit court denying a writ

of error and supersedeas to the judgment of the criminal court entered February 2, 1955, this Court granted this writ of error upon the petition of the State on June 4, 1955.

The State contends that the warrant which was quashed by the criminal court is a valid warrant, and the sole error assigned and relied on for reversal of the foregoing judgments entered April 5, 1955, and February 2, 1955, is the action of the circuit court in sustaining the judgment of the criminal court dismissing the case on the ground that the warrant is insufficient in law.

The defendant insists that the complaint and the warrant are fatally defective because they show that when the complaint was made and the warrant was issued on September 25, 1950, the relator, Sharlene Davis Crouser, was a married woman and that they do not show that she had lived separate and apart from her husband and had not cohabited with him for more than one year before the birth of the bastard child of which she was delivered.

The defendant also contends, in support of his motion to dismiss this writ of error as improvidently awarded, that the question of the legal sufficiency of the warrant can not be considered upon this writ of error because a review of the judgment of the circuit court setting aside the verdict and remanding the case to the criminal court for a new trial, entered January 8, 1954, upon writ of error to that court, was not applied for or obtained from this Court, within the time provided by law; that the judgment of the circuit court of January 8, 1954, not having been appealed from or reversed, is conclusive upon the parties to this proceeding; and that the record of the proceedings in the criminal court and in the circuit court, including the complaint and the warrant, is not before this Court because bills of exceptions incorporating the proceedings were not signed and certified by the judge of the criminal court within sixty days from the adjournment of the term at which its judgment of September 24, 1951, was entered.

The contention of the defendant that the record of the case in the criminal court and in the circuit court upon the writs of error to that court is not before this Court because not incorporated in proper bills of exceptions signed and certified within the time required is not well founded. The evidence offered and the instructions submitted upon the trial in which a verdict was returned were made a part of the record by several bills of exceptions which were signed and certified at the instance of the defendant within sixty days after the adjournment of the term of the criminal court at which the judgment confirming the verdict was entered on September 24, 1951. That evidence and those instructions were also incorporated in the bills of exceptions signed and certified, at the instance of the State, within sixty days from the adjournment of the term of the criminal court at which the final judgment of that court quashing the warrant and dismissing the case was entered on February 2, 1955. The contents of the first set of bills of exceptions were made a part of the record. Whether it was necessary to incorporate any of the contents of those bills of exceptions in the second set of bills of exceptions is unimportant and need not be determined for, in any event, the contents of each set of bills of exceptions are part of the record before this Court upon this writ of error. The absence of the complaint and the warrant from either set of bills of exceptions is likewise of no consequence. The process, the pleadings filed, and the orders entered in the criminal court and in the circuit court are part of the record and need not be made so by bill of exceptions.

The complaint, upon which a warrant is issued in a bastardy proceeding, is a pleading and when filed as such is a part of the record and should not be included in a bill of exceptions. 3 Am. Jur., Appeal and Error, Section 580. See *Diener* v. *Star-Chronicle Publishing Company*, 230 Mo. 613, 132 S. W. 1143, 33 L.R.A., N.S., 216. In *Brown* v. *Cook*, 77 W. Va. 356, 87 S. E. 454, L.R.A., 1916D, 220, this Court held that, when a plea is

tendered and objection to it is sustained, an exception is taken, and the order of the court shows the ruling and the exception and identifies the plea, the plea is a part of the record. See also *State* v. *Houchins,* 102 W. Va. 169, 134 S. E. 740; *Miller* v. *Starcher,* 86 W. Va. 90, 102 S. E. 809; *Spence* v. *Robinson,* 35 W. Va. 313, 13 S. E. 1004. In *Smith* v. *White,* 63 W. Va. 472, 60 S. E. 404, 14 L.R.A., N. S., 530, the opinion contains this language: "The exclusion of Plea 2 is a ground of error. It is doubtful whether it is a part of the record. The order of the court rejecting it does not order it to be a part of the record, and according to *Sweeney* v. *Baker,* 13 W. Va. 158, it cannot be so considered; but as that order numbers the paper and calls it a plea, we think that under the liberal principles stated in *Hughes* v. *Frum,* 41 W. Va. 445, and *Kay* v. *Glade Creek,* 47 Id. 467, we can consider that plea." In *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, this Court held that a plea in abatement which is filed in a case is a part of the record.

In 22 C.J.S., Criminal Law, Section 303a, the text contains these statements: "The term 'complaint' is a technical one, descriptive of proceedings before magistrates. It is and has been defined to be * * * the name of a pleading filed by one person other than the public prosecutor, by which a criminal action is instituted in a justice's or a probate court, * * *." In *City of Richland* v. *Null,* 194 Mo. App. 176, 185 S. W. 250, the opinion, defining a complaint, uses this quotation from 8 Cyc. 407: "A form of legal process which consists of a formal allegation or charge against a party, made or presented to the appropriate court or officer, as for a wrong done or crime committed; * * *."

In 4 Am. Jur., Arrest, Section 7, a warrant is defined as "a legal process, issued by competent authority, directing the arrest of a person or persons upon grounds stated therein." See Voorhees, The Law of Arrest, Second Edition, Section 28. A warrant is also defined as "a writ or precept issued by a magistrate, justice, or other com-

petent authority, addressed to a sheriff, constable, or other officer, requiring him to arrest the body of a person therein named, and bring him before the magistrate or court, to answer, or to be examined, touching some offense which he is charged with having committed." Black's Law Dictionary, Fourth Edition, page 1756. As the warrant in this case is a writ or process it is a part of the record, under Section 32, Article 3, Chapter 96, Acts of the Legislature, 1949, Regular Session, which amended Article 3, Chapter 56, Code, 1931, and provides that "The writ or process commencing any action at law or suit in equity shall be a part of the record, without oyer thereof." See also *State ex rel. Russell* v. *Leedy*, 141 W. Va. 474, 91 S. E. 2d 477; *McKinley* v. *Queen*, 125 W. Va. 619, 25 S. E. 2d 763.

The contentions of the defendant that the legal sufficiency of the warrant can not be considered upon this writ of error because a review of the judgment of the circuit court setting aside the verdict and remanding the case for a new trial, entered January 8, 1954, upon writ of error to that court, was not sought or obtained from this Court within the time provided by law, and that the judgment of the circuit court of January 8, 1954, not having been appealed from or reversed, is conclusive upon the parties to this proceeding, are also without merit.

The judgment of the circuit court of January 8, 1954, did not specifically hold the warrant to be invalid and it did not finally adjudicate the merits of the case. That judgment stated that it was "the opinion of the Court to set aside the verdict returned by the jury herein, and the same is hereby set aside, and this case remanded to the Criminal Court of Marion, West Virginia, for a new trial in accordance with the laws of this State." and that "the State indicating a desire to appeal, the judgment of this Court is hereby ordered suspended for a period of 60 days from the rising of the Court to allow an appeal to be perfected, * * *."

Under Paragraph (i), Section 1, Article 5, Chapter 58, Code, 1931, which provides that "In any civil case where there is an order granting a new trial or rehearing, and in such cases an appeal may be taken from the order without waiting for the new trial or rehearing to be had;", the judgment of the circuit court was subject to review by this Court on writ of error. *DeBoard* v. *Camden Interstate Railway Company,* 62 W. Va. 41, 57 S. E. 279; *Lambert* v. *Ensign Manufacturing Company,* 42 W. Va. 813, 26 S. E. 431; *Gwynn* v. *Schwartz,* 32 W. Va. 487, 9 S. E. 880; *Miller* v. *Citizens' Fire, Marine and Life Insurance Company of Wheeling,* 12 W. Va. 116. The State, however, was not required under penalty of being concluded by any subsequent final judgment, to seek a writ of error from this Court to the judgment of the circuit court instead of submitting, as it did, to the award of a new trial granted the defendant by that judgment. The action of the circuit court in setting aside the verdict and remanding the case to the criminal court for new trial in that court did not finally adjudicate or determine the principles of the cause or the merits of the case. It was fully executed and its purpose was accomplished by the remand of the case and upon the remand the status of the case, before the judgment quashing the warrant and dismissing the case was entered, was the same as its status before the first trial in the criminal court at which time the issues involved were undetermined.

Though the record of the proceeding upon the trial which resulted in a verdict and a judgment in the criminal court on September 24, 1951, which were set aside by the circuit court on the first writ of error by its judgment of January 8, 1954, is before this Court, the question whether that court committed error in setting aside the verdict and remanding the case for a new trial can not be considered and its action in so ruling can not be disturbed upon this writ of error for two reasons. One reason is that the State does not present that question by its assignment of error or seek a review of that judg-

ment upon this writ of error and in consequence that issue is not before this Court. The second reason is that the judgment, though subject to review by writ of error upon application to this Court within four months from the date of its entry, was not brought before this Court in that manner during the period fixed by law for that purpose. An application for a writ of error to review the judgment of a court in setting aside a verdict and awarding a new trial must be presented to an appellate court within the time prescribed by statute which, in this case, was four months from the entry of the judgment of the circuit court on January 8, 1954. Section 7, Article 4, Chapter 58, Code, 1931; *State* v. *Davidson,* 134 W. Va. 328, 59 S. E. 2d 469. See also *Point Pleasant Register Publishing Company* v. *County Court of Mason County,* 115 W. Va. 708, 177 S. E. 873. The State submitted to that judgment, by failing to exercise its right to apply to this Court for a writ of error within the prescribed period of time, and it can not now be considered or disturbed. That judgment, not having determined the question of the validity of the warrant, however, does not preclude consideration and determination of that question by this Court or control its action, upon this writ of error, in reviewing the judgment of the circuit court entered April 5, 1955, and the judgment of the criminal court entered February 2, 1955, which are the only final judgments by which that issue was considered and determined.

A judgment of a circuit court, setting aside a verdict and reversing a judgment of a court of limited jurisdiction, upon writ of error in a bastardy proceeding, and remanding the proceeding to such court for a new trial, is subject to review upon writ of error from this Court if such writ of error is applied for or perfected within four months from the date of the entry of the judgment of the circuit court; but such judgment can not be considered or disturbed upon a writ of error from this Court to a subsequent judgment of the circuit court denying a writ of error to a final judgment of the court of limited

jurisdiction, entered after the remand of the proceeding, which quashed the warrant in such proceeding on the ground that it was insufficient in law and dismissed the proceeding, and which writ of error from this Court was perfected within four months from the entry of the judgment of the circuit court denying a writ of error to the final judgment of the court of limited jurisdiction but was not applied for or perfected within four months from the entry of the prior judgment of the circuit court which set aside the verdict and remanded the proceeding for a new trial.

Though a judgment of a circuit court, setting aside a verdict and reversing a judgment of a court of limited jurisdiction, and remanding a bastardy proceeding to such court for a new trial, to which judgment of the circuit court a writ of error from this Court was not applied for or perfected within four months from its entry, can not be considered or disturbed by this Court upon a writ of error from this Court to a subsequent judgment of the circuit court denying a writ of error to the final judgment of the court of limited jurisdiction, entered after the remand of the proceeding, which quashed the warrant on the ground that it was insufficient in law and dismissed the proceeding, such judgment of the circuit court setting aside the verdict and remanding the proceeding, not having determined the question of the sufficiency of the warrant or the merits of the case, does not preclude consideration and determination of that question by this Court or control its action in reviewing the judgment of the circuit court and the judgment of the court of limited jurisdiction upon writ of error, perfected within the time prescribed by law, from this Court to the judgment of the circuit court which denied a writ of error to the judgment of the court of limited jurisdiction quashing the warrant and dismissing the proceeding.

The motion of the defendant to dismiss this writ of error as improvidently awarded is denied; but the record

of the proceedings in connection with the trial of the case in the criminal court at which a verdict was rendered will not be considered and the scope of this writ of error is limited to a review of the action of the criminal court in quashing the warrant and dismissing this case after it was remanded to that court.

The pertinent provisions of Section 1, Article 7, Chapter 48, Code, 1931, the statute upon which this proceeding is based, are: "Any unmarried woman may go before a justice of the county in which she resides and accuse any person of being the father of a bastard child of which she has been delivered. Such justice shall examine her under oath, and reduce her examination to writing and sign it. On such examination, unless the child be three years old or upwards, the justice shall issue a warrant, directed to the sheriff of, or a constable in, any county where the accused may be, requiring him to be apprehended and taken before a justice of the county in which he may be found; and it shall be the duty of such justice to require the accused to enter into a recognizance, with one or more good securities, in a sum not less than five hundred nor more than one thousand dollars, conditioned for his appearance at the next term of the circuit court of the county in which such warrant issued, to answer such charge, and to abide by and perform the order of the court in relation thereto. If a married woman lives separate and apart from her husband for the space of one year or more, and shall not at any time during such separation, cohabit with such husband she may, if she be delivered of a child at any time after such one year, and while such separation continues, accuse any person, other than her husband, of being the father of such child, in like manner, and the same proceedings shall thereupon be had, as if she were an unmarried woman."

The statute declares and recognizes the right of any unmarried woman who has been delivered of a bastard child to accuse, at any time before the child becomes three

years of age, any person of being the father of her child. It also declares and recognizes the right of a married woman, who lives separate and apart from her husband for a period of one year or more, who does not at any time during their separation cohabit with her husband, and who is delivered of a child at any time after the period of one year and while such separation from her husband continues, to accuse any person, other than her husband, of being the father of her child in like manner as if she were an unmarried woman.

The first portion of the statute relating to an unmarried woman who is delivered of a child while she is unmarried contains no provision concerning the time within which she may accuse a person as the father of her child except that she must do so before the child attains the age of three years. The second portion of the statute, relating to a married woman, requires that she shall live separate and apart from her husband for a period of at least one year, that she shall not at any time during that period cohabit with her husband, and that a child of which she is delivered be born after such period of one year and while the separation from her husband continues, before she may accuse any person, other than her husband, of being the father of such child. It is obvious that these provisions relating to a married woman were intended to apply to a child born to her after her marriage and during the time the marriage continues. It is equally manifest that the provisions of the statute relating to an unmarried woman were intended to apply to a child born to her before her marriage; for it is certain that if she is delivered of a child while unmarried and she marries after its birth she can not comply with the requirements of the statute which relate to a woman who while married is delivered of a child whose father is a person other than her husband.

If the statute means, as the defendant contends, that a woman who is delivered of a child while she is unmarried must also be unmarried when she accuses a person of being the father of her child, she may make such ac-

cusation at any time, even ten minutes, before she marries, within three years after the birth of the child, but she may not do so at any time, even though it is only one minute, after she marries, within the three year period. If she waits until after her marriage she can not comply with the requirements imposed by the statute upon a woman who while married is delivered of a child, and she is deprived of the right, conferred by the statute upon an unmarried woman, to require the father of the child to contribute to its support.

The main purpose of Section 1, Article 7, Chapter 48, Code, 1931, relating to a bastardy proceeding, and of the proceeding authorized by that section of the statute, is to prevent an illegitimate child from becoming a charge upon the county and to compel the father to bear the burden of its maintenance and support, to the relief of the State and the public. *Holmes* v. *Clegg,* 131 W. Va. 449, 48 S. E. 2d 438; *State ex rel. Rufus* v. *Easley,* 129 W. Va. 410, 40 S. E. 2d 827; *State ex rel. Cottrill* v. *Jarvis,* 121 W. Va. 496, 5 S. E. 2d 115; *State ex rel. Pierce* v. *Williams,* 95 W. Va. 218, 120 S. E. 594; *Waters* v. *Riley,* 87 W. Va. 250, 104 S. E. 559; *Burr* v. *Phares,* 81 W. Va. 160, 94 S. E. 30, L.R.A. 1918D, 289; *Bowen* v. *Parsons,* 78 W. Va. 791, 90 S. E. 336; *Swisher* v. *Malone,* 31 W. Va. 442, 7 S. E. 439. The statute, being remedial, should be construed liberally to effectuate its purpose. *Cobb* v. *Vest,* 138 W. Va. 660, 76 S. E. 2d 885. The construction of the statute, for which the defendant contends, would deprive a woman who is unmarried at the time she is delivered of an illegitimate child but who becomes a married woman within three years after the birth of the child, who fails to accuse the father of the child before her marriage, but who does so afterwards and within the three year period, of the relief afforded her by the statute in a proceeding for which it makes provision and which only the mother of the child can maintain. It would produce, in such instance, a result not intended by the legislature and defeat the main purpose for which the statute was enacted. Such construc-

tion should not be adopted unless clearly required by the language of the statute.

The terms employed in the two provisions which deal separately and distinctly with an unmarried woman who is delivered of a child and a woman who while married is delivered of a child whose father is a person other than her husband, in the light of the purpose and the intention of the legislature in enacting the statute, do not lend themselves to or compel a construction which will deprive a woman, who is unmarried when her child is delivered but who marries a person, other than the father of the child, and after her marriage and within three years from its birth makes an accusation against its father, of the benefits conferred upon her by the statute or her right to maintain the proceeding which it provides to require him to maintain and support the child. The bastardy proceeding provided for by the statute, though criminal in form, is a civil, not a criminal, action. *Holmes v. Clegg*, 131 W. Va. 449, 48 S. E. 2d 438; *State ex rel. Rufus v. Easley*, 129 W. Va. 410, 40 S. E. 2d 827; *State ex rel. Cottrill v. Jarvis*, 121 W. Va. 496, 5 S. E. 2d 115; *Waters v. Riley*, 87 W. Va. 250, 104 S. E. 559; *Bowen v. Parsons*, 78 W. Va. 791, 90 S. E. 336; *Bratt v. Cornwell*, 68 W. Va. 541, 70 S. E. 271. No fine or punishment is involved and the only question which arises in such proceeding is whether the defendant is the father of the child. *Holmes v. Clegg*, 131 W. Va. 449, 48 S. E. 2d 438; *State ex rel. Rufus v. Easley*, 129 W. Va. 410, 40 S. E. 2d 827; *Swisher v. Malone*, 31 W. Va. 442, 7 S. E. 439.

The provision of Section 1, Article 7, Chapter 48, Code, 1931, that an unmarried woman may accuse any person of being the father of a child of which she is delivered relates to her status at the time of the birth of the child and does not relate to her status when she makes an accusation against a person as its father or require her to retain her status as an unmarried woman at that time. Her status as an unmarried woman is fixed and determined as of the time of the birth of the child and not

as of the time she makes a complaint against the person accused of being the father of the child. The provision in the same section of the statute which requires a married woman to live separate and apart from her husband for a period of at least one year, not to cohabit with him while so separated from him, and the birth of the child to occur after such period of one year and while she is separated from her husband, before she may accuse a person other than her husband of being the father of the child, applies to a woman who is married when the child is delivered but it does not apply to a woman who is unmarried at and prior to the birth of a child of which she is delivered. This construction and application of the provisions of section one of the statute relating to an unmarried woman are in accord with and are supported by the decisions of appellate courts in at least three other jurisdictions in this country in which statutory provisions closely resembling those here involved were considered and similarly construed and applied. *State ex rel. King* v. *Hopps*, 44 S. D. 125, 182 N. W. 632, 14 A. L. R. 971; *Parker* v. *Nothomb*, 65 Nebr. 308, 91 N. W. 395, 60 L.R.A. 699, on rehearing, 65 Nebr. 315, 93 N. W. 851; *People ex rel. Wilmers* v. *Volksdorf*, 112 Ill. 292.

In the *State ex rel. King* case the mother of an illegitimate child was unmarried when the child was delivered. After the child was born, but before the mother filed a complaint, she married a person other than the father of the child. The statute, upon which the proceeding was based, Section 2981, South Dakota Revised Code, 1919, quoted in part in the opinion, provided that "When an unmarried woman who shall be pregnant or delivered of a child, which by law would be deemed a bastard, shall make complaint to a justice of the peace of the county where she may be so pregnant or delivered, or the person accused may be found, and shall accuse, under oath or affirmation, a person with being the father of such child, it shall be the duty of such justice to issue a warrant against the person so accused and cause him to be brought forthwith before him, or in his absence

any other justice of the peace in such county." The court construed the statute to mean, and the court held, that the word "unmarried", as used in the statute, properly referred to the status of the mother when she became pregnant and was delivered of the child and did not refer to her status when she made the complaint, and that the complaint, made by her after her marriage to a person other than the father of the child, stated a good cause of action and was sufficient on demurrer.

In *Parker* v. *Nothomb*, 65 Nebr. 308 91 N. W. 395, 60 L.R.A. 699, on rehearing, 65 Nebr. 315, 93 N. W. 851, the provisions of the statute under consideration, Section 1, Chapter 37, Compiled Statutes of Nebraska, 1901, as quoted in the opinion upon the rehearing, were: "That on complaint made to any justice of the peace in this state by any unmarried woman resident therein, who shall hereafter be delivered of a bastard child, or being pregnant with a child which, if born alive, may be a bastard, accusing on oath or affirmation any person of being the father of said child, the justice shall take such accusation in writing, * * * ". The complainant in a bastardy proceeding based upon the statute was an unmarried woman when her child was delivered but was a married woman when she made the complaint against the father of the child who was a person other than her husband.

The sole question presented was whether the word "unmarried", as used in the statute, related to the status of the mother of the child at the time it was born or to her status at the time she made the complaint when she had become a married woman. The court held that her status, under the statute, was fixed as of the time of the birth of the child and not as of the time of the making of the complaint, and placed that construction upon the statute. In the opinion upon the rehearing, reported in 65 Nebr. 315, 93 N. W. 851, in which the court adhered to its former opinion reported in 65 Nebr. 308, 91 N. W.

395, 60 L.R.A. 699, the court, after quoting the applicable provisions of the statute, used this language:

"It is earnestly insisted by defendant's counsel that because of the language just quoted, the mother of a bastard child, who, subsequently to its birth and before instituting the proceedings therein contemplated, marries, can not thereafter bring or maintain an action under the statute. It is argued that the construction given the statute in the prior opinion is contrary to the clear import of the language therein used, and against the weight of adjudged cases bearing on the question. Chief reliance for the construction contended for by the defendant is placed on the wording of that part of the section we have quoted, and it is urged that the intention of the legislature is made so apparent therefrom that there is left no room for any other construction as to the meaning of the language than that the mother of the illegitimate child must be an unmarried woman when she makes the complaint in bastardy, and that an allegation that she is at the time of filing the complaint an unmarried woman is essential and necessary to be made and proved in order to give her and her illegitimate child the benefit and advantage afforded by the statute. It should, perhaps, here be said that on a first reading of the statute no other view seems admissible. Nevertheless, maturer reflection and full consideration of the entire act, bearing in mind the object and purpose which the legislature had in view in adopting the statute, as gleaned from the title as well as the act itself, produces in our minds a well-settled conviction that such construction would, in a measure, defeat the intention of the law-making body which passed the measure. In a very recent decision we have said: 'It is a well-settled rule in the interpretation of statutes that the reason and intention of the law giver will control the strict letter of the law when the latter would lead to palpable injustice or absurdity.' *Kelley* v. *Gage County*, 67 Nebr., 6. In the interpretation of statutes, courts ascertain the intention of the legislature and give effect to it rather than to the

literal sense of the terms employed. *State* v. *Baushausen,* 49 Nebr., 558. The law is manifestly one created by a statute remedial in character, and to which resort must be had in the first instance in order to determine the legislative intendment and the objects and purposes sought to be accomplished by its enactment. * * * . There is in fact no substantial reason, nor can any be advanced, why the legislature intended to deny to the illegitimate child, whose mother after its birth has married, the protection of the statute, and yet extend such protection to those in exactly the same condition whose mothers have not married. The rule is unvarying, so far as we have examined, to the effect that if the mother of an illegitimate child shall marry one other than the father after the commencement of bastardy proceedings, such marriage will not have the effect of abating the action, or relieving the putative father of the legal obligations imposed upon him by the statute. *Austin* v. *Pickett,* 9 Ala., 102; *Roth* v. *Jacobs,* 21 Ohio St., 646; *State* v. *Ingram,* 4 Hayw. (Tenn.), 220. See, also, *Swett* v. *Stubbs,* 34 Me., 178. If a marriage of the mother after the action is instituted, and before judgment, will not operate to discontinue the action, upon what substantial grounds can it be argued that a marriage before the action is instituted will be a bar to the proceedings? By what course of reasoning can it be said that a distinction exists, affecting rights under the statute, between the woman who instituted an action and then immediately marries and one who marries and immediately begins such action? As regards the illegitimate children, their legal status is exactly the same, and if one is to be denied the benefit of the law because its mother has married before instituting an action, then the legislature has not extended to it the equal protection of the law. We can not believe that this situation was in contemplation by the legislature when it amended the act by inserting the word 'unmarried' between the words 'any' and 'woman.' An examination of the entire act as originally passed, and its subsequent amendment, the title to the act, and the language used in expressing the will of the legisla-

ture, constrains us to the view, as expressed in the original opinion, that the word 'unmarried,' as used in the statute, refers solely to the status of the complainant at the time the illegitimate child is begotten and born, and does not have reference to her situation when proceedings are begun against the father to compel him to contribute to the child's support. What the statute does say, we think, is that when any unmarried woman who has been delivered of a bastard child shall afterwards, and regardless of her status at the time, make complaint in writing as is required by statute, then the proceedings shall be had to charge the father with the support of his child, such as is contemplated by the statute. The word 'unmarried' can only mean, if we give the language used an interpretation based on reason and in consonance with the manifest intention of the legislature, the status of the mother at the time of the begetting and birth of the illegitimate child."

In *People ex rel. Wilmers* v. *Volksdorf*, 112 Ill. 292, the Court held that the subsequent marriage of the mother of a child of which she was delivered before her marriage did not prevent her from making complaint against the reputed father of the child, under a statute which provided that when an unmarried woman shall be pregnant or be delivered of a child which by law would be deemed to be a bastard and shall make complaint to a justice of the peace accusing a person of being the father of the child the justice shall issue a warrant against such person; and that the word "unmarried", as used in the statute, did not properly relate to the time of the making of the complaint. In the opinion the Court said: "The statute authorizes the making of the complaint when a single woman is pregnant with child. In that case the complainant must be 'unmarried' at the time of making the complaint. It also authorizes the institution of the prosecution when an unmarried woman has been *delivered* of a child, in which case it is not necessary that she be unmarried when she makes the complaint. The marriage of the mother of an illegitimate child, after deliv-

ery, to one not the father, can not affect the *status* of such child, and her husband will not be liable for its support. (*Brush* v. *Blanchard,* 18 Ill. 46; *Mowbry* v. *Mowbry,* 64 Id. 383.) The true construction of the statute is, that the mother shall be unmarried at the time the child is born, and the word 'unmarried,' in the law, does not properly relate to the time of making the complaint."

The precise question here presented has not been considered and determined in any prior decision of this Court. The reasons stated and the conclusion reached in the three cited cases, however, carry conviction and are applicable here; and those decisions are approved and followed in the determination of the controlling question presented upon this writ of error.

Though the complaint and the warrant issued upon it in this case show that the relator was married when she made the complaint and the warrant was issued, they also show that, at and prior to the time the child was delivered, she was an unmarried woman within the meaning of the statute; and as such she may prosecute this proceeding against the defendant.

A warrant in a bastardy proceeding, which is based upon the sworn complaint of a married woman, which is issued by a justice of the county in which she resides within three years after the birth of her child, which accuses a person of being the father of such child, and which shows that the complainant was an unmarried woman at and before she was delivered of such child, is sufficient under Section 1, Article 7, Chapter 48, Code, 1931; and a motion to quash such warrant on the ground that the complainant was not an unmarried woman when the complaint was made and the warrant was issued should be overruled.

The action of the criminal court in sustaining the motion of the defendant to quash the warrant and in dismissing this proceeding on the ground that the warrant is insufficient in law constituted reversible error.

The judgment of the circuit court rendered April 5, 1955, denying a writ of error to the judgment of the criminal court, and the judgment of that court rendered February 2, 1955, quashing the warrant and dismissing this proceeding, are reversed and set aside; and this proceeding is remanded to the criminal court to be, further proceeded with in conformity to the principles enunciated in this opinion.

*Reversed and remanded.*